IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DARRELL GREEN**,

                *Plaintiff*,

v.

**STATE FARM FIRE AND CASUALTY COMPANY**,

                *Defendant*.

Cause No. 3:23-CV-580-CWR-ASH

## ORDER

Before the Court is the defendant's motion for summary judgment. Docket No. 11. The matter is fully briefed and ready for adjudication. After reviewing the facts, arguments, and applicable law, the Court concludes that the motion is due to be granted.

**I.  Factual and Procedural History**

On February 17, 2021, accumulated ice and snow caused Darrell Green's shed to collapse. The next day, he filed a claim with his insurer, State Farm Fire & Casualty Company, seeking coverage for damage to the shed and the items of farm property he had kept in it.

State Farm paid for the property items but ultimately refused to cover the shed structure.[1] Green subsequently filed this suit. He says State Farm's breach of contract and bad faith denial of insurance benefits led to an interruption in his business and caused him to pay $50,000 out of pocket to repair the shed.

---

[1] State Farm's first denial letter contended that the shed was not a "building." It later changed its position to the one discussed below.

State Farm now seeks summary judgment. Its arguments and Green's responses are discussed below.

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III. Discussion

### A. Law

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

"The interpretation of insurance policy language is a question of law." *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998) (citation omitted).

"It is well-established that 'when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written.'" *Acadia Ins. Co. v. Hinds Cnty. Sch. Dist.*, No. 3:12-CV-188, 2013 WL 2897931, at *2 (S.D. Miss. June 13, 2013) (quoting *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281 (Miss. 2009)). The words employed in a contract "are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003) (citation omitted). "An instrument that is clear, definite, explicit, harmonious in all its provisions, and is free from ambiguity will be enforced." *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (Miss. 2012) (quotation marks and citation omitted).

The Mississippi Supreme Court defines "ambiguity" as "a susceptibility to two reasonable interpretations." *Dalton v. Cellular S., Inc.*, 20 So. 3d 1227, 1232 (Miss. 2009) (quotation marks and citations omitted).

> An "ambiguous" word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

*Id.* (citation omitted). "[I]nternal conflict or uncertainty can provide the necessary condition precedent to find ambiguity." *Miss. Farm Bureau Mut. Ins. Co. v. Walters*, 908 So. 2d 765, 769 (Miss. 2005) (citation omitted).

In *Dalton*, the Mississippi Supreme Court examined a contract with contradictory terms. "Clause 3.5 allows either party to terminate at will," the Court observed, while "Clause

3

3.4 and the unnumbered paragraph following clause 3.5 allow [the plaintiff] to terminate with cause under certain circumstances." 20 So. 3d at 1233. Because "reasonable minds could reach different conclusions after reading the whole contract, in discerning the intent of the parties, while giving effect to each separate clause," the contract was ambiguous. *Id.*

"[I]f the Court is unable to ascertain the meaning of the contract and the intent of the parties within the four corners of the contract," it must "apply the canons of contract construction." *Epperson*, 93 So. 3d at 17 (quotation marks and citation omitted). "Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party." *Id.* (quotation marks and citation omitted). "The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995).

**B.   Analysis**

This dispute requires an interpretation of the policy language concerning "Coverage F – Farm Buildings and Structures."

The declarations page confirms that Green's shed was listed as a "Farm Building and Structure[]." Docket No. 1-1 at 71 & 73. The shed had $59,200 of coverage and was insured against "Spec Perils." *Id.*

State Farm relies upon policy language providing that Green's shed collapse would be covered "only when the covered building is insured for Accidental Direct Physical Loss (A.D.P.L.) as shown on the" declarations page. *Id.* at 34. Green's shed was admittedly *not* covered for ADPL. It was covered only for Specified Perils. From this, State Farm concludes that it owes him no coverage for the shed structure.

Green, however, points to the very next page of the policy. There, in describing the various kinds of "Specified Perils" that State Farm would cover, the policy lists "j. **Collapse**, meaning accidental direct physical loss to covered farm personal property . . . caused only by one or more of the following: . . . (5) weight of ice, snow, sleet or rain which collects on a roof." *Id.* at 35-36. And from this—because ice and snow-caused collapse is literally a specified peril—Green concludes that State Farm is required to cover his shed structure.

This insurance policy is not a model of clarity. Among other things, it is confusing that State Farm distinguishes "Accidental Direct Physical Loss" from "Specified Perils," only to then define the Specified Peril of "collapse" as an "accidental direct physical loss." *Id.* at 35. One can be forgiven for a degree of frustration.

Despite its defects, though, the plain language of the policy does say why Green's shed damage is not covered. The Specified Perils paragraph that he relies upon—paragraph "j."—says it covers "farm **personal** property." *Id.* (emphasis added). Green was compensated for the loss to personal property within the shed. Docket No. 12 at 10. The shed structure, however, is not personal property. No coverage was owed. And because no coverage was owed, Green's tort claims fail.

## IV. Conclusion

The motion is granted. A separate Final Judgment shall issue.

**SO ORDERED**, this the 3rd day of October, 2024.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE